## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KIM M.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 20-cv-2072 (GMH)** |
| | ) |
| **KILOLO KIJAKAZI, Acting** | ) |
| **Commissioner of Social Security,**[2] | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Kim M. brought this action seeking to reverse the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant" or "the Commissioner"), denying Plaintiff's application for Supplemental Security Income ("SSI") benefits under Title II of the Social Security Act, 42 U.S.C. § 405(g). Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) failing to undertake a function-by-function analysis in determining Plaintiff's RFC, (2) failing to properly consider record evidence that supported a limitation on Plaintiff's ability to stand and walk, and (3) applying an incorrect standard when assessing Plaintiff's subjective complaints. Plaintiff seeks reversal of the Commissioner's decision, or alternatively remand to the Social Security Administration pursuant to 42 U.S.C. § 405(g), on these grounds.

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited Aug. 24, 2021).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted in place of her predecessor. *See* Fed. R. Civ. P. 25(d).

The Commissioner argues that the ALJ properly determined Plaintiff's RFC based on substantial evidence.

Based on the parties' arguments and review of the record,[3] Plaintiff's motion for reversal is denied, and Defendant's motion for a judgment of affirmance is granted.

## I.  BACKGROUND

### A.    Statutory and Regulatory Framework

To be eligible for SSI benefits under the Social Security Act, the Social Security Administration must find a claimant to be "disabled," meaning that the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To make that determination, an ALJ gathers evidence, holds a hearing, takes testimony, and performs the following five-step, sequential inquiry of the disability claim:

Step one:  whether the claimant is engaging in "substantial gainful activity";[4]

Step two:  whether the claimant has a "severe" medically-determinable physical or mental impairment or combination of impairments;[5]

---

[3] The relevant docket entries for purposes of this Memorandum Opinion and Order are (1) the administrative record (ECF No. 11), (2) Plaintiff's motion for judgment of reversal (ECF No. 15-1), (3) Defendant's motion for judgment of affirmance and opposition to Plaintiff's motion for judgment of reversal (ECF No. 16), and (4) Plaintiff's opposition to Defendant's motion for judgment of affirmance and reply to Defendant's opposition to Plaintiff's motion for judgment of reversal (ECF No. 20).  The page numbers cited herein are those assigned by the Court's CM/ECF system.

[4] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit."  20 C.F.R. § 416.910; *see also* 20 C.F.R. § 404.1510 (defining "substantial gainful activity" for the purposes of Social Security Disability Insurance Benefits ("DIB") claims).  "If [the claimant is] doing substantial gainful activity, [the Social Security Administration ("SSA")] will find that [the claimant is] not disabled."  20 C.F.R. § 416.920(a)(4)(i); *see also* 20 C.F.R. § 404.1520(a)(4)(i) (defining the step one inquiry for DIB claims).

[5] An impairment or combination of impairments is "severe" if it "significantly limit[s]" a claimant's "physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "seeing, hearing, [or] speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; exercising judgment; "[r]esponding appropriately to supervision, co-workers[,] and usual work situations"; or "[d]ealing with changes in a routine work setting."  20 C.F.R. § 416.922; *see also* 20 C.F.R. § 404.1522 (defining a severe impairment for the purposes of DIB claims).

Step three:  whether the claimant's impairment is equivalent to one of the disabling impairments listed in the appendix of the relevant regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings");

Step four:  whether the impairment prevents the claimant from performing his or her past relevant work;[6] and

Step five:  whether the claimant, in light of his or her age, education, work experience, and RFC—i.e., the most he or she is able to do notwithstanding his or her physical and mental limitations—in unable to perform another job available in the national economy.[7]

*See* 20 C.F.R. §§ 416.920, 404.1520; *see also Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  "An affirmative answer to question 1 or negative answers to questions 2 or 4 result in a determination of no disability.  Affirmative answers to questions 3 or 5 establish disability." *Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir. 1989).

The claimant bears the burden of proof at the first four steps of the evaluation. *Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011).   At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy that the claimant can perform. *Id.*  In making this determination, an ALJ may call a vocational expert to testify at the hearing as to whether, based on the claimant's RFC, he or she can perform other work that exists in the national economy. *Id.* at 90.

---

[6] "Past relevant work" is work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1); *see also* 20 C.F.R. § 404.1560(b)(1) (defining "past relevant work" for the purposes of DIB claims).  If the claimant can perform his or her past relevant work, a finding of "not disabled" is mandated.  20 C.F.R. § 416.920(a)(4)(iv); *see also* 20 C.F.R. § 404.1520(a)(4)(iv) (defining the step four inquiry for DIB claims).

[7] At the fifth step, the ALJ may, "[i]n the ordinary case, . . . resort[ ] to the applicable medical vocational guidelines" (also known as "the grids") to determine whether the claimant is disabled. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  "The grids 'take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience." *Rosa*, 168 F.2d at 78 (alteration in original) (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)).

### B.      Plaintiff's Disability Claims and Procedural History

Plaintiff was born in September 1965.  ECF No. 11-6 at 2.  She completed the eighth grade

and has previously worked as a hostess, home aide, and house cleaner.  ECF No. 11-2 at 43–46.

Plaintiff filed an application for supplemental security income in September 2017.  ECF No. 11-2

at 16.  In the application, Plaintiff claimed disability due to a knee cyst, foot pain, breast cyst,

arthritis, and hip pain.  ECF No. 11-6 at 14.

Plaintiff's application was initially denied in January 2018, and upon reconsideration in

May 2018.  ECF No. 11-2 at 16.  She then requested a hearing before an ALJ, which was held in

September 2019.  *Id.* at 37.  Both Plaintiff and an impartial vocational expert testified at the

hearing.  *Id.* at 42, 69.  Plaintiff testified that she was disabled as a result of a pinched nerve in her

shoulder, left foot pain, a bunion on her right foot, a cyst in her breast, knee pain, and a herniated

disk in her back.  ECF No. 11-2 at 48.  Plaintiff also testified that although she had performed

some work during the prior fifteen years, she never made more than $500 per year.  *Id.* at 44–46.

Plaintiff explained that she had not worked recently due to knee, foot, and back pain, which made

it difficult to walk; a pinched nerve, which made it difficult to raise her arm; and a "trigger finger,"

which made it difficult to grasp things.[8]  ECF No. 11-2 at 47–49.

The ALJ then called the vocational expert to testify and asked whether jobs existed in the

national economy for an individual the same age as Plaintiff, with the same work experience and

education, who is able to perform light work but could never climb ladders, ropes, or scaffolds;

occasionally climb ramps and stairs, balance, kneel, crouch and crawl; frequently handle with the

left nondominant upper extremity; occasionally reach overhead with the left nondominant upper

---

[8] A "trigger finger," also known as stenosing tenosynovitis, "is a condition in which one of [the] fingers gets stuck in
a bent position," such that it "may bend or straighten with a snap—like a trigger being pulled and released."  Trigger
finger,  https://www.mayoclinic.org/diseases-conditions/trigger-finger/symptoms-causes/syc-20365100  (last visited
Aug. 31, 2021).

extremity; occasionally push and pull and operate foot controls with the bilateral lower extremities; never have concentrated exposure to temperature extremes; and never be exposed to workplace hazards, such as unprotected heights, dangerous moving machinery, and uneven ground.  ECF No. 11-2 at 71.  The vocational expert testified that such an individual could perform work as a cashier, front desk clerk, and weight recorder.  *Id.* at 71–72.

C.    The ALJ's Decision

The ALJ issued her decision denying benefits in October 2019.  ECF No. 11-2 at 13–29. That decision became the final decision of the Commissioner when the Appeals Council concluded that there was no basis for granting Plaintiff's request for review in June 2020.  ECF No. 11-2 at 2.  Because Plaintiff's arguments all relate to the ALJ's determination of Plaintiff's RFC, the following recitation focuses on that determination.

1.    Substantial Gainful Employment, Severe Impairments, and the Listings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 8, 2017, the date she applied for SSI.  ECF No. 11-2 at 18.  At step two, he found that Plaintiff had the following impairments that qualified as severe under the regulations:  left plantar nerve lesion, status post left foot surgery, right knee degenerative joint disease, right knee osteoarthritis, and trigger finger.  ECF No. 11-2 at 18.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any impairments in the Listings.  *Id.* at 20.  Specifically, she considered Listing 1.02 for major dysfunction of one or more joints due to any cause and concluded that Plaintiff's knee and foot impairments did not meet this listing because the record evidence did not indicate that Plaintiff was unable to ambulate effectively, generally defined as "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive

device that limits the functioning of both upper extremities." *Id.* The ALJ explained that the record evidence was inconsistent regarding whether Plaintiff required the use of an assistive device at all, and there was no evidence that Plaintiff used an assistive device that limited the functioning of both upper extremities. *Id.* The ALJ also concluded that Plaintiff's trigger finger did not meet Listing 1.02 because the record evidence did not include findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis, resulting in the inability to perform fine and gross movements effectively. *Id.*

2.      Plaintiff's RFC

At step four of the inquiry, the ALJ determined that Plaintiff had the following RFC:

[Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs, balance, kneel, crouch, and crawl; she can frequently finger with the left nondominant upper extremity; she can occasionally reach overhead with the left nondominant upper extremity; she can occasionally push and pull and operate foot controls with the bilateral lower extremities; she must avoid concentrated exposure to temperature extremes; and she must avoid all exposure to workplace hazards such as unprotected heights, dangerous moving machinery, and uneven ground.

ECF No. 11-2 at 21. The regulations define "light work" as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). More specifically, "the full range of light work requires standing or walking, off and on, for . . . approximately 6 hours of an 8-hour workday." Titles II and XVI: Determining Capability to do Other Work—the Medical-Vocational Rules of Appendix 2, Social Security Ruling 83-10 [hereinafter, SSR 83-10], 1983 WL 31251, at *5–6 (S.S.A. Jan. 1, 1983).

In determining that RFC, the ALJ found that Plaintiff's medically determinable

impairments could reasonably be expected to cause the alleged symptoms of knee swelling, limited shoulder range of motion, difficulty grasping objects, difficulty walking, inability to lift objects weighing more than eight pounds, and difficulty sitting and standing for more than 20 minutes at a time. *Id.* at 21–22. However, the ALJ further found that Plaintiff's statements as to the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent" with the record evidence. *Id.* at 22. Specifically, following her review of Plaintiff's testimony, treatment history, and the objective medical evidence, the ALJ determined that, while the evidence showed Plaintiff did have a history of left foot, right knee, and left middle finger impairments, those conditions had generally responded well to treatment. *Id.* at 24–25.

Beginning with the Plaintiff's left foot impairments, the ALJ acknowledged record evidence that showed some limitations due to a lesion of the left plantar nerve and some left foot pain following surgery. *Id.* at 11-2 at 21–22; *see* ECF No. 11-7 at 2, 5, 106; ECF No. 11-8 at 48, 50. Plaintiff alleged these impairments made it difficult to walk and stand. ECF No. 11-2 at 21–22. The ALJ contrasted those representations with an October 2017 medical report from Plaintiff's treating physician noting that, following foot surgeries in August 2016 and September 2017, Plaintiff's "presurgical pain was mostly resolved and she only exhibited mild to moderate tenderness." *Id.* at 23; *see* ECF No. 11-8 at 52. Indeed, Plaintiff testified that the surgeries relieved her symptoms and she continued to have only a "little pain every now and then." ECF No. 11-2 at 53. Accordingly, the ALJ concluded that although Plaintiff had experienced impairments to her left foot that caused significant pain, the record evidence indicated that the impairment largely resolved with treatment. ECF No. 11-2 at 23. The ALJ determined that the evidence regarding Plaintiff's foot impairment supported limiting Plaintiff to light work, with additional postural and environmental limitations. *Id.*

7

Turning to Plaintiff's knee impairments, the ALJ pointed to record evidence showing that Plaintiff had been diagnosed with patellofemoral syndrome[9] in her right knee in July 2016, and osteoarthritis in her right knee in September 2017. *Id.* at 23–24; *see* ECF No. 11-7 at 44, 47.  She also pointed to x-rays from August 2019 showing mild degenerative change.  ECF No. 11-2 at 24; *see* ECF No. 11-8 at 85.  Plaintiff testified at the hearing that she was unable to ambulate without a cane due to her knee pain; and the medical record reflects she rated the pain from her knee as being a 10 out or 10 in August 2017 and an 8 out of 10 in December 2018.  ECF No. 11-2 at 23–24; *see* ECF No. 11-7 at 49; ECF No. 11-8 at 64.  The ALJ contrasted those representations with January 2017 treatment notes from Plaintiff's treating physician, Dr. Evan Argintar, who noted that Plaintiff's right knee patellofemoral syndrome had "improved to such an extent with physical therapy" that by January 2017 she had "absolutely no symptoms" and her condition was "clinically resolved."  ECF No. 11-2 at 23, 25; *see* ECF No. 11-7 at 43.  More, although Plaintiff rated her right knee pain as 10 out of 10 in August 2017, Dr. Argintar noted that Plaintiff walked without a limp, exhibited no tenderness to the knee, and exhibited a full range of motion in her knees.  ECF No. 11-2 at 23; *see* ECF No. 11-7 at 49–50.  The ALJ further noted that Plaintiff continued to complain of significant knee pain in December 2018 and August 2019, but that a physical examination from August 2019 had unremarkable findings, showing that Plaintiff walked with only a mildly antalgic gait, there was no significant erythema or warmth in the knee, and only mild effusion.  ECF No. 11-2 at 24; *see* ECF No. 11-8 at 83.  Further, medical imaging in August 2019 showed only mild degenerative change in her knee.  ECF No. 11-2 at 24; *see* ECF No. 11-8 at 85.

---

[9] Patellofemoral syndrome "is pain at the front of [the] knee, around [the] kneecap (patella). . . . Simple treatments— such as rest and ice—often help, but sometimes physical therapy is needed to ease patellofemoral pain." Patellofemoral pain syndrome, https://www.mayoclinic.org/diseases-conditions/patellofemoral-pain-syndrome/symptoms-causes/syc-20350792#:~:text=Patellofemoral%20(puh%2Dtel%2Do,that%20involve%20running%20and%20jumping (last visited Aug. 31, 2021).

Although Plaintiff claimed at the hearing that she used a cane for the past three years (ECF No. 11-2 at 53), the ALJ's decision highlighted record evidence that was inconsistent regarding Plaintiff' use of an assistive device.  ECF No. 11-2 at 25.  For example, the ALJ pointed to a record from November 2016 indicating that Plaintiff did not require an assistive device (ECF No. 11-7 at 82), and noted that, even where Plaintiff exhibited an antalgic gait, she did not appear to use an assistive device and did not need help getting on and off the examination table or rising from a chair (ECF No. 11-7 at 72).  ECF No. 11-2 at 23–25.  Last, he emphasized podiatry treatment notes from November 2018 reflecting that Plaintiff was ambulatory with a cane but had normal strength, and from January 2019 where Plaintiff exhibited an antalgic gait but made no mention of a cane.  ECF No. 11-2 at 25; *see* ECF No. 11-8 at 71, 80.  The ALJ thus concluded that the record evidence indicated that Plaintiff has right knee pain, but that it is not as limiting as she alleges and is consistent with Plaintiff's ability to perform light work with additional postural and environmental limitations.  ECF No. 11-2 at 24.

Last, turning to Plaintiff's trigger finger, the ALJ noted that Plaintiff was diagnosed with trigger finger in 2017.  *Id.*; *see* ECF No. 11-7 at 50.  Plaintiff alleged that her trigger finger made it difficult to grasp objects.  ECF No. 11-2 at 21.  The ALJ contrasted that claim with Plaintiff's own statement that a corticosteroid injection was very helpful for her trigger finger and following Plaintiff's trigger finger release surgery, there is little record evidence of the condition.  *Id.* at 24–25; *see* ECF No. 11-8 at 57–58, 94.  The ALJ concluded the record evidence supported Plaintiff's ability to perform light work with additional manipulative limitations.  ECF No. 11-2 at 24.

Next the ALJ considered the opinion evidence.  The ALJ considered the opinions of the state agency medical consultants, Dr. Eduardo Haim and Dr. Veronica Bedeau, to be "somewhat persuasive" because they were consistent with each other and were supported by reference to

Plaintiff's treatment record.  *Id.* at 26; *see* ECF No. 11-3 at 2–13, 15–26.   However, the ALJ noted that neither consulting physician had the opportunity to review more recent record evidence.   ECF No. 11-2 at 26.   The ALJ also considered the consultative examine Dr. Nolte's opinion to be only "somewhat persuasive."   ECF No. 11-2 at 26–27.   She opined that Plaintiff had moderate limitations in walking, climbing, and squatting and recommended that she avoid prolonged standing, walking, squatting, kneeling, and crawling.  *Id.*; *see* ECF No. 11-7 at 70–75.  The ALJ found that opinion only somewhat persuasive because it had support from Dr. Nolte's examination notes and other record evidence, but it was vague as to the meaning of "moderate limitations" and "prolonged standing."   ECF No. 11-2 at 26.   Last, the ALJ considered the opinion of Audrey Harris, a nurse practitioner who served as Plaintiff's primary care provider.   ECF No. 11-2 at 27; *see* ECF No. 11-8 at 17–18.   She opined that Plaintiff could sit, stand, and walk for less than two hours, and could lift/carry a maximum of less than 10 pounds at a time.   ECF No. 11-2 at 27; *see* ECF No. 11-8 at 17–18.   The ALJ found this opinion to be unpersuasive because Nurse Harris did not provide any support for her recommended limitations and those recommendations were not consistent with the record evidence.   ECF No. 11-2 at 27.   For example, the ALJ found that Nurse Harris' opinion that Plaintiff could sit, stand, and walk less than two hours and lift/carry less than 10 pounds was not consistent with the record evidence that Plaintiff's left foot and right knee impairments improved with treatment.  *Id.*

       3.     Past Relevant Work and Other Jobs Available in the National Economy

The ALJ next found that Plaintiff had no past relevant work.  *Id.*  At step five, relying on the testimony of the vocational expert, the ALJ determined that there are jobs in the national economy that an individual with Plaintiff's age, education, work experience, and RFC could

perform; specifically, cashier, front desk clerk, and weight recorder.  *Id.* at 28.

## II.  LEGAL STANDARD

A federal district court has jurisdiction over a civil case challenging a final decision of the Commissioner.  42 U.S.C. § 405(g).  A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal standards.  *Id.*; *Butler*, 353 F.3d at 999.

"[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence or that incorrect legal standards were applied.  *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It requires "more than a scintilla [of evidence], but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d1151, 1160 (D.C. Cir. 2002)). "The substantial evidence standard requires considerable deference to the decision rendered by the ALJ." *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995).  The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment "concerning the credibility of the evidence with its own." *Id.*; *see also Butler*, 353 F.3d at 999 (finding that the district court's role is not to reweigh the evidence but only to determine whether the ALJ's findings are "based on substantial evidence and a correct application of the law"). However, "this standard of review requires the Court to carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts." *Pinkney v. Astrue*,

675 F. Supp. 2d 9, 14 (D.D.C. 2009); *see also Lane-Rauth*, 437 F. Supp. 2d at 65 ("[T]his standard of review 'calls for careful scrutiny of the entire record,' to determine whether the Commissioner, acting through the ALJ, 'has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits[.]'" (second alteration in original) (quoting *Butler*, 353 F.3d at 999)).   Moreover, the Court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017), or credit "post-hoc rationalization[s]" advanced by the parties, *Cooper v. Berryhill*, No. 16-1671, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017).   *See also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that a reviewing court "must judge the propriety of [an agency's judgment] solely by the grounds invoked by the agency"); *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) (citing *Chenery*, 332 U.S. at 196).

## III.   DISCUSSION

Plaintiff presents three arguments that the ALJ's determination of her RFC was flawed.   First, she argues that the ALJ erred by failing to conduct a function-by-function analysis of Plaintiff's work-related abilities; specifically, walking and standing.   ECF No. 15-1 at 5.   Second, Plaintiff argues that the ALJ erred by failing to properly assess Dr. Nolte's opinion, which Plaintiff claims supports a standing and walking limitation.   *Id.* 8–10, ECF No. 20 at 3.   Third, Plaintiff argues that the ALJ erred by applying an improper standard to assess Plaintiff's subjective complaints.   ECF No. 15-1 at 10.   None of those arguments succeed.

### A.   Function-by-Function Analysis

In support of her first argument, Plaintiff relies on Social Security Ruling 96-8p, which states that "[an] RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" before the

RFC "may [ ] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p [hereinafter SSR 96-8p], 1996 WL 374184, at *1 (S.S.A. July 2, 1996). She asserts that the ALJ erred by failing to perform a function-by-function assessment of Plaintiff's work-related abilities; specifically, walking and standing. ECF No. 15-1 at 5–6. Plaintiff is incorrect.

As the Commissioner explained in her brief, to the extent that Plaintiff contends that the ALJ's opinion must include an analysis that addresses in writing each and every work-related function listed in SSR 96-8p, that position has been rejected. *See* ECF No. 16 at 16. "Although the language of SSR 96–8p requires that the ALJ's RFC assessment '*must address* . . . the remaining exertional . . . capacities of the individual,' this does not require written articulation of all seven strength demands"; instead, "[t]he narrative discussion requirement simply requires the ALJ to explain an 'individual's ability to perform sustained work activities in an ordinary work setting on a regular basis," and "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.'" *Banks v. Astrue*, 537 F. Supp. 2d 75, 85 (D.D.C. 2008); *see also Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 207 (D.D.C. 2017) ("This court has found that when 'the ALJ provided a thorough narrative discussion of [Plaintiff's] limitations,' and has built a 'logical bridge' from the evidence to his conclusion, the RFC analysis does not require 'written articulation of all seven strength demands.'") (quoting *Banks*, 537 F. Supp. 2d at 85); *Nsiah v. Saul*, No. 19-cv-00042, 2021 WL 372784, at *14 (D.D.C. Feb. 3, 2021) ("[A] narrative discussion 'is sufficient for the ALJ to fulfill [his] obligation to complete a function-by-function analysis that allows the [court] to conduct meaningful review.'") (quoting *Davis v. Berryhill*, 272 F. Supp. 3d 154, 172 (D.D.C. 2017);

*Simmons v. Saul*, No. 18-CV-1293, 2019 WL 12251882, at *13 (D.D.C. Sept. 30, 2019) ("To the extent that Plaintiff argues that the absence of explicit and separate evaluations of each of the relevant strength categories in itself requires remand (or reversal), he is mistaken."), *report and recommendation adopted*, 2019 WL 12251883 (D.D.C. Oct. 22, 2019).  Indeed, although the D.C. Circuit has not addressed that specific question, *see Banks*, 537 F. Supp. 2d at 84, a number of other Courts of Appeals have indicated that "an ALJ need not expressly discuss a claimant's capacity to perform each work-related function before classifying the claimant's RFC in exertional terms," *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam) (collecting cases from the Sixth, Seventh, and Ninth Circuits).

Here, the ALJ clearly expressed the reasoning underlying her assessment of Plaintiff's RFC throughout her discussion of the medical and other evidence.  As Plaintiff's brief explains, Plaintiff testified that she could only sit for 20 minutes, stand for 20 minutes, and walk for less than one block.  ECF No. 15-1 at 7.  But the ALJ found that the record evidence indicated that Plaintiff was not so limited.  For example, although Plaintiff did have a history of left foot pain and right knee pain and had been diagnosed with a lesion of the plantar nerve, osteoarthritis, and degenerative joint disease, the ALJ pointed to record evidence showing that Plaintiff's foot and knee impairments responded well to treatment.  ECF No. 11-2 at 23–24.  Indeed, the ALJ explained that following Plaintiff's foot surgeries in August 2016 and September 2017, the record showed little evidence of problems with Plaintiff's left foot and Plaintiff testified that the surgeries relieved her pain and she only has a "little pain every now and then" (ECF No. 11-2 at 53; *see* ECF No. 11-8 at 52), while Plaintiff's treating physician noted that her right knee patellofemoral syndrome had done "excellent" with therapy and she had "absolutely no symptoms" (ECF No. 11-2 at 23; *see* ECF No. 11-7 at 43).  More, the ALJ pointed to record evidence showing that Plaintiff did not

14

consistently use a cane to ambulate, did not always walk with a limp, and at times exhibited full range of motion in her knees.  ECF No. 11-2 at 23; *see* ECF No. 11-7 at 49–50, 72, 11-8 at 64–65, 83.  And although Plaintiff stated that her knee pain was eight to ten out of ten at times, treatments notes were inconsistent with such statements because they indicated that Plaintiff either walked without a limp or had only a mild antalgic gait, exhibited no tenderness to the knee, no significant erythema or warmth in the knee, exhibited a full range of motion in her knees, and had only mild effusion.  ECF No. 11-2 at 23–24; *see* ECF No. 11-7 at 49–50; ECF No. 11-8 at 64, 83.  Last, the ALJ noted that x-rays of Plaintiff's knees showed only mild degenerative change.  ECF No. 11-2 at 24; *see* ECF No. 11-8 at 85.  Accordingly, the ALJ concluded that the record demonstrated that Plaintiff could perform light work, which involves either "a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls"  20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b), with additional postural and environmental limitations, including never climbing ladders, ropes, or scaffolds, occasionally climbing ramps and stairs, balancing, kneeling, crouching, and crawling, occasionally operating foot controls with the bilateral lower extremities, and avoiding all exposure to workplace hazards.  ECF No. 11-2 at 21, 23.

The ALJ also considered the opinion evidence.  The ALJ only found the opinions of the state agency consultants "somewhat persuasive" because they were consistent with each other and with the treatment evidence; however, they did not have the benefit of later medical records including the more recent evidence of Plaintiff's foot and knee impairment that show continued reports of pain, but little evidence of limitation on examination.  ECF No. 11-2 at 26; *see* ECF No. 11-3 at 2–13, 15–26.  Regarding Dr. Nolte's opinion, the ALJ also considered it "somewhat persuasive" because it was consistent with Dr. Nolte's examination; however, it was vague as to

the meaning of "moderate limitations" and her recommendation that Plaintiff avoid "prolonged standing" and thus the ALJ could not determine whether her opinion was consistent with the medical record.  ECF No. 11-2 at 26–27; *see* ECF No. 11-7 at 70–75.  Last, the ALJ did not find the opinion of Plaintiff's nurse practitioner persuasive because it recommended extreme limitations, without any support, and was not consistent with the medical evidence in the record, including the evidence that Plaintiff's knee and foot impairments showed improvement with treatment.  ECF No. 11-2 at 27; *see* ECF No. 11-8 at 17–18.

Thus, the ALJ provided a sufficient discussion of the record evidence, connected that discussion to the limitation included in Plaintiff's RFC, and explained the weight she provided to the opinion evidence and why.  That is sufficient.  *See Goodman v. Colvin*, 233 F.Supp.3d 88, 112 (D.D.C. 2017) (finding ALJ's RFC discussion adequate where ALJ "considered the record as a whole[,] [ ] discussed which evidence he found credible and why[,] [ ] clearly explained the relevance of [the record evidence] . . . and [ ] provided a rational basis for finding that Plaintiff's claims regarding pain were not entirely credible); *Banks*, 537 F. Supp. 2d at 85 (concluding that ALJ's decision met the requirements of SSR 96-8p where he "provided a 'logical bridge' between the evidence and his conclusion); *cf. Lane-Rauth*, 437 F. Supp. 2d at 67 (finding ALJ's assessment inadequate where ALJ simply listed all of the medical evidence in the record, without further explanation or discussion, and then summarily concluded that the claimant was capable of performing sedentary work); *Simmons v. Saul*, No. 18-cv-1293, 2019 WL 12251882, at *14 (D.D.C. Sept. 30, 2019) (finding ALJ's assessment inadequate where ALJ simply listed all of the medical evidence in the record and, without explanation, concluded that the claimant could perform medium work, despite record evidence to the contrary).

### B.   Consideration of Dr. Nolte's Opinion

Plaintiff also argues that the ALJ erred by failing to include any limitation on Plaintiff's ability to stand or walk, despite Dr. Nolte's opinion that Plaintiff had a moderate limitation in walking and should avoid prolonged standing and walking.  ECF No. 15-1 at 8–9; ECF No. 20 at 3. This argument fails for two reasons.

First, Plaintiff's claim that the ALJ failed to include any limitation on Plaintiff's ability to stand and walk is simply inaccurate.  ECF No. 15-1 at 9.  An RFC restriction of light work itself contains a limitation on standing and/or walking.  The regulations define "light work" as involving either "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).  SSR 83-10 expands on that definition, recognizing that light work may require "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," or may allow for "sitting most of the time."  1983 WL 31251 at *5–6.  That is, light work includes an inherent limitation to less-than-constant standing and walking, and at times can allow for sitting most of the time.  *Ellison v. Saul*, No. 20-cv-579, 2020 WL 7753294, at *10 (D.D.C. Dec. 8, 2020) (recognizing that light work includes an inherent limitation on standing and walking), *report and recommendation adopted*, 2020 WL 7714734 (D.D.C. Dec. 29, 2020).  Courts have found that a restriction to light work is appropriate for an individual limited to a moderate amount of standing and/or walking, as Dr. Nolte found with respect to Plaintiff.  *See Stanley v. Comm'r of Soc. Sec.*, No. 1:14-cv-870, 2015 WL 9473402, at *3 (S.D. Ohio Dec. 2, 2015) (rejecting the argument that "a 'moderate' amount of standing and walking is incompatible with the amount of standing and walking permitted by light work"), *report and recommendation adopted*, 2015 WL 9460322 (S.D. Ohio Dec. 28, 2015).  Indeed, the Eleventh Circuit has ruled that an individual  restricted to standing for two hours and walking for two hours

in an eight-hour workday—that is, a limitation that is more restrictive than standing and/or walking

for six hours per day—may perform light work, noting that according to the regulation, "light work

may require either 'a good deal of walking or standing, *or* . . . sitting most of the time with some

pushing or pulling of arm or leg controls.'"   *Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x

911, 915 (11th Cir. 2014) (alteration in original) (quoting 20 C.F.R. § 404.1567(b)).   The premise

of Plaintiff's argument—that the ALJ failed to include a limitation on standing and walking in his

RFC—is thus faulty.

Second, to the extent that Plaintiff contends that Dr. Nolte's opinion supported limiting

Plaintiff to sedentary work, that argument also fails.   Plaintiff highlights that Dr. Nolte's 2016

examination notes indicated that she had a very antalgic gait, could not walk on her heels and toes,

could not squat, and had limited range of motion.   ECF No. 15-1 at 9; *see* ECF No. 11-7 at 70–75.

Dr. Nolte also opined that Plaintiff had a moderate limitation in walking and should avoid

prolonged standing and walking, among other things.   ECF No. 11-7 at 70–75.   Both are true, but

again, courts have found that moderate limitations on physical functioning are consistent with the

full range of light work, not sedentary work as Plaintiff appears to contend.   *See, e.g.*, *Monserrate*

*B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-700, 2021 WL 2587249, *4 (W.D.N.Y. June 24, 2021)

("[A]n opinion of mild-to-moderate limitations in physical functions is consistent with the

demands of light work."); *April B. v. Saul*, No. 8:18-CV-682, 2019 WL 4736243, at *5 (N.D.N.Y.

Sept. 27, 2019) ("Indeed, moderate limitations in standing and walking are consistent with light

work."); *Gurney v. Colvin*, 2016 WL 805405, *3 (W.D.N.Y. March 2, 2016) (same) (collecting

cases).   And, as discussed above, light work is also consistent with Dr. Nolte's recommendation

that Plaintiff avoid prolonged standing and walking because light work may require *either* 'a good

deal of walking or standing, *or* . . . sitting most of the time with some pushing or pulling of arm or

leg controls.'" *Freeman*, 593 F. App'x at 915 (alteration in original) (first emphasis added) (quoting 20 C.F.R. § 404.1567(b)).  Thus, Plaintiff "has failed to point to *any* specific piece of evidence not considered by the [ALJ] that might have changed the outcome." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 864 (4th Cir. 2014).

### C.    Evaluation of Subjective Complaints

Plaintiff last contends that the ALJ erred in his assessment of Plaintiff's subjective complaints.  ECF No. 15-1 at 10–13.  As the ALJ properly explained, "[i]n considering [a] claimant's symptoms,"[10] there is a "two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce [her] pain or other symptoms"; if there is such an impairment, the second step is to "evaluate the intensity, persistence, and limiting effects of the [ ] symptoms to determine the extent to which they [impose] . . . functional limitations."  ECF No. 11-2 at 21; *see* 20 C.F.R. § 416.929.  At the second step, the ALJ must "evaluate claimant's statements as well as 'all [of] the available evidence,' including 'claimant's medical history, medical signs and laboratory findings; objective medical evidence of pain; the medical opinions of the claimant's treating physician[s]; and any other evidence that bears on the severity of the pain.'"  *Troy v. Colvin*, 266 F. Supp. 3d 288, 295 (D.D.C. 2017) (alterations in original) (quoting *Butler*, 353 F.3d at 1004).  "While an ALJ may not reject a claimant's statements about pain 'solely because they are not substantiated by objective medical evidence,' the ALJ may consider 'whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence.'"  *McCormick v. Saul*, No. 18-cv-1704, 2021 WL 2634732, at *9 (D.D.C. June 25, 2021) (alteration in original) (quoting *Butler*, 353 F.3d at

---

[10] The regulations define "symptoms" as claimants' "own description of [their] physical or mental impairment."  20 C.F.R. § 404.1502(i).

1004–05).  The assessment of a claimant's subjective reports of pain and other symptoms "'is solely within the realm of the ALJ' and is only to be disrupted when 'an ALJ fails to articulate a rational explanation for his or her finding.'"  *Davis v. Saul*, No. 18-cv-204, 2020 WL 3542232, at *4 (D.D.C. June 30, 2020) (quoting *Grant v. Astrue*, 857 F. Supp. 2d 146, 156 (D.D.C. 2012)).  Thus, where an ALJ has applied the correct legal standard and then "articulated the specific reasons" supporting his finding, it will not be disturbed.  *Callaway v. Berryhill*, 292 F. Supp. 3d 289, 298 (D.D.C. 2018).

Plaintiff objects only to the second step of the two-step analysis, arguing that the ALJ erred in assessing her subjective complaints by "erroneously requir[ing] [ ] Plaintiff to prove the type and degree of her subjective complaints by objective medical evidence."  ECF No. 15-1 at 11–14. Not so.  As a preliminary matter, Plaintiff does not actually identify any specific complaints or symptoms that the ALJ failed to adequately assess.  In any event, the Court finds that the ALJ sufficiently considered each of Plaintiff's subjective complaints and provided an adequate explanation for why they were not consistent with the other record evidence.

Beginning with Plaintiff's left foot impairments, the ALJ acknowledged that Plaintiff had a history of left foot pain and surgeries.  ECF No. 11-2 at 22.  However, the ALJ determined that the record evidence was inconsistent with Plaintiff's claim that her left foot pain made it difficult to stand and walk.  Specifically, the ALJ explained that Plaintiff's left foot pain had largely resolved following her August 2016 and September 2017 foot surgeries and pointed to an October 2017 medical record where Plaintiff's treating physician noted that Plaintiff's presurgical pain was mostly resolved and she only exhibited mild to moderate tenderness.  *Id.* at 23; *see* ECF No. 11-8 at 52).

Turning to Plaintiff's claim of significant right knee pain, the ALJ noted that although the

20

record demonstrated a history of knee osteoarthritis and degeneration, Dr. Argintar's January 2017 treatment notes indicated that, following physical therapy, Plaintiff's right knee patellofemoral syndrome had done "excellent" and Plaintiff had "absolutely no symptoms."  ECF No. 11-2 at 23; *see* ECF No. 11-7 at 43.  Then, in August 2017, despite Plaintiff's claim of pain rated ten out of ten, Dr. Argintar reported that the claimant walked without a limp, exhibited no tenderness to the knees, and exhibited full range of motion in her knees.  ECF No. 11-2 at 23; *see* ECF No. 11-7 at 49–50.  More, looking at evidence two years later in August 2019, the ALJ noted that Plaintiff complained of significant pain in her right knee, but a physical examination showed only a mildly antalgic gait, no significant erythema or warmth in the knee, and only mild effusion.  ECF No. at 11-2 at 23; *see* ECF No. 11-8 at 83.  Plaintiff also claimed that she relied on a cane to walk because of knee pain; however, the ALJ pointed to medical reports that contradicted that statement.  For example, the ALJ noted that at Plaintiff's November 2016 consultative examination, Dr. Nolte noted that Plaintiff did not use an assistive device at all, did not require help changing for the examination or getting on and off the examination table, and rose from a chair without difficulty. ECF No. 11-2 at 23; *see* ECF No. 11-7 at 72.  More, the ALJ noted that in August 2019, Dr. Mark W. Zawadsky stated that Plaintiff exhibited only a mildly antalgic gait and did not mention the use of a cane.  ECF No. 11-2 at 23; *see* ECF No. 11-8 at 83.

Last, considering Plaintiff's trigger finger, the ALJ acknowledged Plaintiff's diagnosis, but concluded that the record evidence was not consistent with Plaintiff's testimony that she had difficulty grasping objects because Plaintiff had previously stated that a corticosteroid injection in 2017 was very helpful and, following a trigger finger release, the record showed little evidence of the condition.  ECF No. 11-2 at 23; *see* ECF No. 11-8 at 57–58, 94.

Thus, contrary to Plaintiff's argument, the ALJ did not make her determination by asking whether there was objective corroborating evidence of Plaintiff's subjective complaints.  Rather, she considered Plaintiff's claims, but relied on all of the available evidence, including the Plaintiff's own statements, her medical history, and the objective medical evidence to conclude that Plaintiff's subjective complaints were inconsistent with the record evidence.  That is sufficient. *See Troy*, 266 F. Supp. 3d at 297 (rejecting the argument that the ALJ applied the incorrect standard to assess plaintiff's subjective complaints where the ALJ considered the plaintiff's claims, the objective medical evidence, statements made by the plaintiff's treating physicians, and opinions from state medical examiners to conclude that the plaintiff's complaints were "not entirely credible"); *Callaway*, 292 F. Supp. 3d at 297–98 (finding that the ALJ did not improperly reject subjective complaints based on a lack of objective evidence where the ALJ considered the plaintiff's statements, the objective medical evidence, the opinion evidence, and the plaintiff's hearing testimony).

## IV.   CONCLUSION

For the reasons stated above, the Court will deny Plaintiff's motion for judgment of reversal and will grant Defendant's motion for judgment of affirmance.  An Order will be entered contemporaneously with this Memorandum Opinion.

Date: September 3, 2021

                          _____
                          G. MICHAEL HARVEY
                          UNITED STATES MAGISTRATE JUDGE